**Mohamadou SARR, Petitioner,**

**v.**

Eric H. **HOLDER Jr.**,[1] **Attorney General, Respondent.**

**No. 08–1706–ag.**

United States Court of Appeals, Second Circuit.

April 21, 2009.

---

1. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric. H. Holder Jr. is automatically substituted for former Attorney General Michael B. Mukasey as respondent in this case.

Ronald S. Salomon, New York, NY, for Petitioner.

Gregory G. Katsas, Assistant Attorney General, Barry J. Pettinato, Assistant Director, Office of Immigration Litigation (Robbin K. Blaya, Trial Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, on the brief), Washington, D.C., for Respondent.

PRESENT: Hon. WALKER, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

**SUMMARY ORDER**

Petitioner Mohamadou Sarr, a native and citizen of Mauritania, seeks review of the March 13, 2008 order of the BIA affirming the May 8, 2006 decision of Immigration Judge ("IJ") Elizabeth A. Lamb, denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Mohamadou Sarr,* No. A78 650 869 (B.I.A. Mar. 13, 2008), *aff'g* No. A78 650 869 (Immig. Ct. N.Y. City May 8, 2006). We assume the parties' familiarity with the underlying facts and procedural history of the case.

When the BIA issues an opinion affirming the IJ's decision in part and modifying it in part, we review the IJ's decision as modified by the BIA, confining our review to the rationale of the IJ on which the BIA relied. *See Dong Gao v. BIA,* 482 F.3d 122, 125 (2d Cir.2007). Because the BIA assumed Sarr's credibility, we do the same. *See Yan Chen v. Gonzales,* 417 F.3d 268, 271–72 (2d Cir.2005). We review *de novo* questions of law and the application of law to undisputed fact. *See Bah v. Mukasey,* 529 F.3d 99, 110 (2d Cir.2008). We review the agency's factual findings under the substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4)(B); *Dong Gao,* 482 F.3d at 126; *see also Gjolaj v. BCIS,* 468 F.3d 140, 143 (2d Cir.2006) (reviewing the question of nexus for substantial evidence).

We conclude that the agency reasonably found both that Sarr failed to establish that he suffered past persecution on account of a protected ground, and that he did not have a well-founded fear of future persecution. Sarr conceded to the IJ that he did not personally suffer persecution in Mauritania. However, Sarr contends that the agency erred in failing to find that he suffered past persecution because his father and brother were kid-

naped, his father died while in captivity, and his family lost their farm, all of which Sarr asserts occurred on account of racial hostility directed against his family by the White Moors. As a preliminary matter, although there was some circumstantial evidence that race or ethnicity played a role in the kidnaping of Sarr's father and brother, Sarr has not shown that any reasonable fact-finder would have been compelled to find a nexus to a protected ground. Indeed, Sarr specifically testified that he did not know what motivated the actions of the White Moors. *Compare with Gjolaj*, 468 F.3d at 143 (finding past persecution where petitioner "was arrested in the context of political demonstrations protesting Communism").

■ Moreover, even assuming that the White Moors were motivated to kidnap Sarr's father and brother because of their race or ethnicity, the agency correctly observed that Sarr "cannot claim past persecution based solely on harm that was inflicted on a family member on account of that family member's ... protected characteristic." *Tao Jiang v. Gonzales*, 500 F.3d 137, 141 (2d Cir.2007). And while it is appropriate for the agency to "consider the totality of the circumstances in each case to determine whether harm suffered by family members *in combination with other factors* may constitute past persecution of the applicant," *id.* (emphasis added), Sarr does not identify any such "other factors" that would compel a reasonable fact-finder to find a "valid nexus" between the White Moors' conduct and a protected ground, *id.* at 142. *Cf. Jorge–Tzoc v. Gonzales*, 435 F.3d 146, 150 (2d Cir.2006) (find-

ing that youth may be such a factor).[2] For the same reasons, the agency reasonably found that there was insufficient evidence that Sarr had a well-founded fear of future persecution on account of a protected ground.

■ Sarr also argues that the BIA erred in failing to find that there is a "pattern or practice of persecution" of Afro–Mauritanians in Mauritania. 8 C.F.R. § 1208.13(b)(2)(iii). Sarr does not argue that the BIA employed an improper standard when analyzing this issue. *See, e.g., Mufied v. Mukasey*, 508 F.3d 88, 92–93 (2d Cir.2007) (where the agency did not address the asylum applicant's "pattern or practice" argument, remanding to the BIA with instructions to clarify the applicable standard). Instead, Sarr only argues that the conclusions drawn from the evidence by the BIA were erroneous. Specifically, Sarr claims that "[b]lack Mauritanians" such as himself "have been expelled, beaten, detained, and even killed because of their race and ethnicity." However, while there is some record evidence of racial tension and discrimination in Mauritania which "refers to instances of discrimination and harassment against" Afro–Mauritanians, the BIA reasonably found that the evidence adduced by Sarr "does not describe persecution so systemic or pervasive as to amount to a pattern or practice of persecution." *See Matter of A–M–*, 23 I. & N. Dec. 737, 742 (BIA 2005). Accordingly, the agency's denial of asylum was not improper.

■ Because Sarr was unable to show the objective likelihood of persecution

---

**2.** Sarr argues that the BIA failed to adequately consider whether, based on the loss of his family's farm, he suffered economic harm rising to the level of persecution. However, as the BIA recognized, Sarr did not know what had become of the farm, and was unaware that a recent U.S. State Department report noted that returnees to Mauritania were able to reclaim lost property. Thus, the BIA did not err in concluding that any economic harm Sarr suffered was not so severe that it would "constitute a threat to [his] life or freedom." *Matter of T–Z–*, 24 I. & N. Dec. 163, 172 (BIA 2007).

needed to make out an asylum claim, he was necessarily unable to meet the higher standard required to succeed on a claim for withholding of removal. *See Paul v. Gonzales,* 444 F.3d 148, 156 (2d Cir.2006). Finally, for reasons similar to those articulated above, we find no error in the agency's denial of CAT relief where the record evidence did not suggest that Sarr would more likely than not face torture if returned to Mauritania. *See* 8 C.F.R. §§ 1208.16(c), 1208.17; *Khouzam v. Ashcroft,* 361 F.3d 161, 168 (2d Cir.2004).

For the foregoing reasons, the petition for review is DENIED.